UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF FLORIDA - TALLAHASSEE DIVISION

CASE NO.: 05-41281-LMK
CHAPTER 13

IN RE:
DESHAUN VATROY THOMAS AND
TIMIKA SHAWN THOMAS,
    Debtor(s).
_____/

**U.S. BANK, N.A. SUCCESSOR BY MERGER TO THE LEADER MORTGAGE COMPANY'S
MOTION FOR RELIEF FROM THE AUTOMATIC
STAY OR FOR ADEQUATE PROTECTION**

U.S. BANK, N.A. SUCCESSOR BY MERGER TO THE LEADER MORTGAGE COMPANY (hereinafter "Secured Creditor"), by and through its undersigned counsel, hereby moves this Court for entry of an order that either lifts the automatic stay or provides adequate protection, and as grounds therefore, shows this Court:

1. This Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 361(1), 362 and F.R.B.P. 4001(a).

2. The Debtor(s) filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code on October 3, 2005.

3. Secured Creditor holds an interest in the below described property by virtue of a Mortgage recorded in O.R. Book 2625, Page 1475, of the Public Records of LEON County, Florida. Said Mortgage secures a Note in the amount of EIGHTY-FOUR THOUSAND THREE HUNDRED THIRTY-THREE AND 00/100 DOLLARS ($84,333.00). (Copies of the aforementioned loan documents are attached hereto as Exhibit "A".)

> LOT 17, BLOCK "B", COLLEGE TERRACE, A SUBDIVISION AS PER MAP OR PLAT THEREOF RECORDED IN PLAT BOOK 3 PAGE 21 OF THE PUBLIC RECORDS OF LEON COUNTY, FLORIDA.
> a/k/a 511 Famcee Avenue, Tallahassee, FL 32310

<u>CASE NO.: 05-41281-LMK</u>

4. The Debtor(s) are indebted to Secured Creditor in the amount of SEVENTY-SEVEN THOUSAND SIX HUNDRED FOURTEEN AND 40/100 DOLLARS ($77,614.40) principal balance, with interest accruing at the rate of $9.57 *per diem*, plus other fees and costs added to the indebtedness (an Affidavit of Indebtedness is attached hereto as Exhibit "B").

5. Payments pursuant to the aforementioned loan documents have been in default (Post-Petition), and remain in default (Post-Petition) for failure to tender the payment due May 1, 2006 and all payments thereafter. Thus, the Debtor(s) has failed to adequately protect the interest of Secured Creditor.

6. Secured Creditor is entitled to adequate protection of its interest in the subject real property and respectfully requests that this Court require the Debtor(s) to tender all post-petition payments and late charges, along with an award of reasonable attorney's fees and costs for bringing this motion.

7. Alternatively, Secured Creditor's security interest in the subject property is being significantly jeopardized by the Debtor(s)' failure to make regular payments under the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such security interest and the same is grounds to lift the automatic stay imposed by 11 U.S.C § 362(d)(1).

**WHEREFORE**, Secured Creditor respectfully requests entry of an Order Granting Adequate Protection; or, alternatively, that the automatic stay be lifted so that Secured Creditor may be permitted to protect its security interest in the subject property outside the bankruptcy forum, and for such other and further relief that this Court deems just and proper.

CASE NO.: 05-41281-LMK

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion for Relief from the Automatic Stay or for Adequate Protection along with all exhibits, was served on all parties on the attached service list, electronically to those persons registered to receive electronic filings as shown on the Notice of Electronic Filing received from the Court and by First-Class U.S. Mail on all other parties this 11th day of July, 2006.

    FABER & GITLITZ, P. A.
    Attorneys for Secured Creditor
    9830 S.W. 77th Avenue, Second Floor
    Miami, Florida 33156
    Telephone: (305) 662-4110
    Facsimile: (305) 662-6359

    BY: _____
    Arthur E. Lewis
    Florida Bar No. 161667

CASE NO.: 05-41281-LMK

## MAILING LIST

Deshaun Vatroy Thomas and
Timika Shawn Thomas
511 Famcee Ave.
Tallahassee, FL 32310

Allen Turnage, Esq.
P.O. Box 15219
2234 Centerville Road, Suite 101
Tallahassee, FL 32317

Leigh D. Hart, Trustee
P.O. Box 646
Tallahassee, FL 32302

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA - TALLAHASSEE DIVISION

CASE NO.: 05-41281-LMK
CHAPTER 13

IN RE:

DESHAUN VATROY THOMAS AND
TIMIKA SHAWN THOMAS,

    Debtor(s).
_____/

## AFFIDAVIT OF INDEBTEDNESS

STATE OF:    ARIZONA

COUNTY OF:    MARICOPA

**BEFORE ME**, the undersigned authority, personally appeared Olivia Todd, who, after being first duly sworn, states under oath:

1. Affiant is the President of NDSC, authorized servicing agent for U.S. BANK, N.A. SUCCESSOR BY MERGER TO THE LEADER MORTGAGE COMPANY, a Secured Creditor in the above captioned matter (hereinafter "Secured Creditor"). I am making this Affidavit upon my own personal knowledge and in support of the Motion for Relief from the Automatic Stay. I am the officer on behalf of Secured Creditor who is responsible for the collection of monies due and owing herein. Furthermore, I am the custodian of Secured Creditor's records with regard to the Debtor(s) account. These books and records include data compilations of the payments received and are kept in the course of regularly conducted business activity.

2. On or about August 17, 2001, Debtor(s) executed and delivered a Note and Mortgage. Secured Creditor is the holder of said instruments.

3. Debtor(s) have defaulted, *post-petition*, under the aforementioned loan by failing to make the May 1, 2006, installment and all payments thereafter.

4. The subject loan has an outstanding principal balance of SEVENTY-SEVEN THOUSAND SIX HUNDRED FOURTEEN AND 40/100 DOLLARS ($77,614.40), having a *per diem* of $9.57, plus advances made (including legal fees and costs) and interest accruing thereon in accordance with the loan documents.

5. I am competent to testify, and if called upon to do so at trial, my testimony would be the same as set forth herein.

CASE NO.: 05-41281-LMK

6. The foregoing is true and correct.

**FURTHER AFFIANT SAYETH NAUGHT**

_____
Olivia Todd, President

**THE FOREGOING AFFIDAVIT** was acknowledged, sworn to and subscribed before me on this 10th day of July, 2006, by Olivia Todd, who is personally known to me and who did take an oath.

_____
NOTARY PUBLIC

(Seal)

Elissa R. Garcia
Notary Public-Arizona
MARICOPA COUNTY
My Commission Expires
AUGUST 28, 2008



R20010069904
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2552 PG: 00908
SEP 07 2001 03:22 PM
BOB INZER, CLERK OF COURTS

R20020015073
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2625 PG: 01475
FEB 15 2002 02:36 PM
BOB INZER, CLERK OF COURTS

Prepared by: Penny Franceli

1022 W. 23rd Street
Panama City, FL 32405
850-770-7000

Documentary Tax Pd. $ Exempt
$ Exempt Intangible Tax Pd.
Bob Inzer, CC Leon County
By _____ Deputy Clerk

THIS INSTRUMENT IS BEING RE-RECORDED TO ADD SPOUSE TO MORTGAGE, NOTARY SECTION, SPECIFY RIDER ATTACHED ON PAGE 7 OF MORTGAGE AND ADD SPOUSE TO TAX EXEMPT RIDER.

―――― [Space Above This Line For Recording Data] ――――

State of Florida

# MORTGAGE

FHA Case No.
091-3463040-703

THIS MORTGAGE ("Security Instrument") is given on       August 17th, 2001
The Mortgagor is
Timika S. Thomas, A Married Woman   joined by her husband Deshaun Thomas

, whose address is
5th Famcee Avenue, Tallahassee, FL 32310

("Borrower"). This Security Instrument is given to
        Peoples First Community Bank

which is organized and existing under the laws of    The State of Florida           , and
whose address is   1022 W. 23rd Street, Panama City, FL 32405
                                        ("Lender"). Borrower owes Lender the principal sum of
Eighty Four Thousand Three Hundred Thirty Three-------
                                        Dollars (U.S. $    84,333.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on   September 1st,
      2031        . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA Florida Mortgage - 4/96

LMD-4R(FL) (9604).01
VMP MORTGAGE FORMS (800)521-7291
Page 1 of 8          Initials: T.T.



R20020015073
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2625 PG: 01476
FEB 15 2002 02:36 PM
BOB INZER, CLERK OF COURTS

of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender the following described property located in LEON County, Florida:

LOT 17, BLOCK "D" COLLEGE TERRACE, A SUBDIVISION AS PER MAP OR PLAT THEREOF RECORDED IN PLAT BOOK 3 PAGE 21 OF THE PUBLIC RECORDES OF LEON COUNTY, FLORIDA.

"this mortgage is given to the florida housing finance corporation and is exempt from taxation pursuant to section 199/183.020.513 (1), florida statutes"

Item #: 41-12-20-B-0170
which has the address of   511 Pamcee Avenue, Tallahassee   [Street, City],
Florida   32310   [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

-4R(FL) (0004).01   Page 2 of 8   Initials:

R200020015073
RECORDED In
PUBLIC RECORDS LEON CNTY FL
BK: R2625   PG: 01477
FEB 15 2002   02:36 PM
BOB INZER, CLERK OF COURTS

R20010069994
RECORDED In
PUBLIC RECORDS LEON CNTY FL
BK: R2552   PG: 00910
SEP 07 2001   03:22 PM
BOB INZER, CLERK OF COURTS

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.



2111-4R(FL) (9604).01                Page 3 of 8                              Initials: T.T. D.T.

```
R20020015073
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2625  PG: 01478
FEB 15 2002 02:36 PM
BOB INZER, CLERK OF COURTS
```



```
R20010069984
PUBLIC RECORDS LEON CNTY FL
BK: R2552  PG: 00911
SEP 07 2001 03:22 PM
BOB INZER, CLERK OF COURTS
```

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

-4R(FL) (0004).01                                Page 4 of 8                              Initials: D.T.

R200020015073
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2625   PG: 01479
FEB 15 2002 02:38 PM
BOB INZER, CLERK OF COURTS

R200100069984
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2552   PG: 00912
SEP 07 2001 03:22 PM
BOB INZER, CLERK OF COURTS

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

   (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

   (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

   (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

   (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

-4R(FL) (9604).01                            Page 5 of 8                                   Initials:

R200020015073
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2625  PG: 01480
FEB 15 2002 02:36 PM
BOB INZER, CLERK OF COURTS


R200100069984
PUBLIC RECORDED IN
BK: R2552  PG: 00913
SEP 07 2001 03:22 PM
BOB INZER, CLERK OF COURTS

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

@D-4R(FL) (9604).01    Page 6 of 8    Initials: J.T.

```
R20020015073
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2625  PG: 01481
FEB 15 2002 02:36 PM
BOB INZER, CLERK OF COURTS
```



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider            ☐ Growing Equity Rider        ☒ Other [specify]
☐ Planned Unit Development Rider  ☐ Graduated Payment Rider           Tax Exempt Rider

-4R(FL) (0004).01                 Page 7 of 8                    Initials: D.T.

```
R20020015073
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2625  PG: 01482
FEB 15 2002 02:36 PM
BOB INZER, CLERK OF COURTS
```



```
R20010069984
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2552  PG: 00915
SEP 07 2001 03:22 PM
BOB INZER, CLERK OF COURTS
```

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____Timika S. Thomas_____(Seal)
WILMA K. FARRIS                                          Timika S. Thomas                    -Borrower

_____          _____Deshaun V. Thomas_____(Seal)
VICKIE P. CARO                                                Deshaun V. Thomas              -Borrower

_____(Seal)      _____(Seal)
                              -Borrower                                                        -Borrower

_____(Seal)      _____(Seal)
                              -Borrower                                                        -Borrower

_____(Seal)      _____(Seal)
                              -Borrower                                                        -Borrower

STATE OF FLORIDA,                        LEON                       County ss:

The foregoing instrument was acknowledged before me this   August 17th, 2001          by
Timika S. Thomas and Deshaun V. Thomas

who is personally known to me or who has produced   drivers license
as identification.

                                                          _____Wilma K. Farris_____
                                                                Notary Public
                                                          Wilma K. Farris
                                                          MY COMMISSION # CC974565 EXPIRES
                                                          October 30, 2004
                                                          BONDED THRU TROY FAIN INSURANCE, INC

-6R(FL) (0004).01                        Page 8 of 8

[Watermark: UNOFFICIAL / Clerk of the Circuit Court / Leon County / DOCUMENT]

R20020015073
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2625 PG: 01483
FEB 15 2002 02:36 PM
BOB INZER, CLERK OF COURTS

R20010059984
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2552 PG: 00916
SEP 07 2001 03:22 PM
BOB INZER, CLERK OF COURTS

## FHA, USDA: RURAL DEVELOPMENT, CONVENTIONAL RIDER TO SECURITY INSTRUMENT

THIS TAX-EXEMPT FINANCING RIDER is made this _____17th_____ day of _August_, _2001_, and is incorporated into and shall be deemed to amend and supplement the Mortgage or Security Deed ("Security Instrument") of the same date given by the Timika S. Thomas and Deshaun T. Thomas, wife & husband undersigned ("Mortgagor") to secure Mortgagor's Note ("Note") to

_Peoples First Community Bank_ ("Lender") of the same date and covering the property described in the Security Instrument and located at:

_511 Fauree Avenue Tallahassee, FL 32310_ (Property Address)

In addition to the covenants and agreements made in the Security Instrument, Mortgagor and Lender further covenant and agree as follows:

Lender, or such of its successors or assigns as may by separate instrument assume responsibility for assuring compliance by the Mortgagor with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if the loan is not paid in full and:

(a) all or part of the property is sold or otherwise transferred by Mortgagor to a purchaser or other transferee:

(i) who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Sections 143(c) and (i) (2) of the Internal Revenue Code; or

(ii) who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Sections 143 (d) and (i) (2) of the Internal Revenue Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143 (d) (1); or

(iii) at an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i) (2) of the Internal Revenue Code; or

(iv) who has a gross family income in excess of the applicable percentage of applicable median family income, as provided in Section 143 (f) and (i) (2) of the Internal Revenue Code; or

(b) Mortgagor fails to occupy the property described in the mortgage without the prior written consent of the Mortgagee or its successors or assigns described at the beginning of this addendum; or

(c) Mortgagor omits or misrepresents a fact which is material with respect to the provisions of Section 143 of the Internal Revenue Code of 1986 in an application for this mortgage.

References are to the Internal Revenue Code as amended and in effect on the date of issuance of the Bonds, the proceeds of which will be used to finance the purchase of the Security Instrument and are deemed to include the implementing regulations.

DATE: _Aug 17 2001_

SIGNATURE OF MORTGAGOR _Timika S. Thomas_

SIGNATURE OF MORTGAGOR _Deshaun T. Thomas_

Return to:   Peoples First Community Bank
             1022 West 23rd St.
             Panama City, Fl. 32405

R20020025406
RECORDED IN
PUBLIC RECORDS LEON CNTY FL
BK: R2641  PG: 01251
MAR 20 2002 12:08 PM
BOB INZER, CLERK OF COURTS

This form was prepared by: Cindie Evans, an employee
of Peoples First Community Bank, address:
1022 West 23rd Street, Panama City, Florida 32405
tel. no: 850-770-7000

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 2305 Hwy 77, Panama City, Florida 32405, does hereby grant, sell, assign, transfer and convey, The Leader Mortgage Company, a party, (herein "Assignee"), whose address is 1015 Euclid Avenue, Cleveland, Ohio 44115; a certain Mortgage dated August 17, 2001    made and executed by
TIMIKA S. THOMAS A MARRIED WOMAN
511 Famcee Avenue, Tallahassee, Florida 32310
And in favor of Peoples First Community Bank, a corporation existing under the laws of the State of Florida and given to secure payment of EIGHTY FOUR THOUSAND THREE HUNDRED THIRTY THREE AND 00/100
Maturity Date: September 1, 2031
which Mortgage is of record in Book, Volume, Liber No. 2625 page 01475
of the Public Records of    Leon County State of Florida, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on    August 31, 2001

_____                            PEOPLES FIRST COMMUNITY BANK
Witness: BECKY GREENE
P.O. BOX 59950, PANAMA CITY, FL 32402

_____                            _____
Witness : CINDIE EVANS                               FRED P. COWN,     VICE PRESIDENT
P.O. BOX 59950 PANAMA CITY, FL 32402                 P.O. BOX 59950 PANAMA CITY, FL 32402

STATE OF FLORIDA
COUNTY OF BAY

I, an officer authorized to take acknowledgments of deeds according to the laws of the State of Florida, duly qualified and acting, HEREBY CERTIFY that FRED P. COWN, respectively as VICE PRESIDENT of PEOPLES FIRST COMMUNITY BANK to me personally known, this day acknowledged before me that they executed the foregoing assignment of mortgage as such officers of said corporation, and that they affixed thereto the official seal of said corporation, and I FURTHER CERTIFY that I know the said persons making said acknowledgments to be the individuals described in and who executed the said assignment of mortgage.

IN WITNESS THIS 31st   day of   AUGUST       A.D. 2001

MY COMMISSION EXPIRES:
OCTOBER 16, 2001                        _____
PERSONALLY KNOWN YES OR TYPE            BOBBIE J. SULLIVAN
IDENTIFICATION PRODUCED                 NOTARY PUBLIC
DID NOT TAKE OATH                       P.O. BOX 59950, PANAMA CITY, FL 32402


BOBBIE J. SULLIVAN
MY COMMISSION # CC 869079
EXPIRES: October 16, 2001
Bonded Thru Notary Public Underwriters